# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1996

_____

Ronald H. Rutledge,       *
      *
    Plaintiff-Appellant,       *
      *   Appeal from the United States District
    v.       *   Court for the District of Minnesota.
      *
Liberty Life Assurance Company       *
of Boston,       *
      *
    Defendant-Appellee.       *

_____

Submitted: November 13, 2006
Filed: March 30, 2007

_____

Before LOKEN, Chief Judge, and LAY[1] and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff-Appellant Ronald H. Rutledge appeals a grant of summary judgment in favor of Defendant-Appellee Liberty Life Assurance Company of Boston (Liberty Life) on his claim for long-term disability benefits pursuant to a plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461.

_____

[1] The Honorable Donald P. Lay took permanent disability retirement on January 3, 2007. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

Rutledge argues the district court[2] erred in finding that Liberty Life did not abuse its discretion in denying Rutledge continued long-term disability benefits. For the reasons set forth below, we affirm.

I.    Background

Andersen Corporation (Andersen) hired Rutledge as a factory window assembler in 1983. Rutledge worked for Andersen for seventeen years. During his employment at Andersen, Rutledge participated in an ERISA group disability income policy (the Policy) offered and administered by Liberty Life. The Policy provides for a twenty-four month period of disability for an employee unable to perform the duties of his own occupation. After twenty-four months, a participating employee may receive disability benefits if he is unable to perform "any occupation." "Any occupation" is defined as an occupation that the insured person "is or becomes reasonably fitted [to perform] by training, education, experience, age, [and] physical and mental capacity."

Prior to his employment at Andersen, Rutledge was injured in a snowmobile accident. He suffered a compression fracture of a vertebra that left him with slight numbness in his left leg and difficulty with urination. These injuries did not hinder his ability to perform his job at Andersen.

In 1998, Rutledge began to experience additional physical ailments arising from the snowmobile accident. In February 2000, Rutledge underwent surgery to relieve pressure on his spinal cord. On June 27, 2000, Rutledge submitted a disability claim, declaring himself disabled as a result of the snowmobile accident. Liberty Life considered his claim and approved "own occupation" disability benefits for Rutledge

---

[2] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

beginning on August 8, 2000. Liberty Life paid Rutledge "own occupation" disability benefits for the full twenty-four-month period provided by the Policy.

While he was receiving "own occupation" benefits, Rutledge saw a number of physicians. In October 2000, Dr. Thomas Rieser, an orthopedic surgeon and the lower back specialist responsible for Rutledge's back surgery, examined Rutledge and stated Rutledge had "no real back pain at this time." In February 2001, Dr. Neal Melby, a general practitioner and Rutledge's primary physician, noted Rutledge was developing numbness and weakness in his legs. Also in February 2001, Dr. Robert Maxwell, a neurosurgeon, examined Rutledge and concluded Rutledge had perfect strength in his legs. Dr. Maxwell noted that any loss of sensation in Rutledge's legs did not affect his ability to walk. By May 2001, Dr. Rieser approved Rutledge for work, with restrictions: Rutledge could not lift more than twenty to thirty pounds and should not repetitively lift, bend, or twist. In January 2002, Dr. Steven Siegel, a urologist, performed surgery on Rutledge. In July 2002, Dr. Siegel reported Rutledge had benefitted from the surgery, but had begun to experience other complications requiring the attention of a colorectal specialist.

In February 2002, Liberty Life informed Rutledge his "own occupation" disability benefits would expire in August 2002. Liberty Life explained it would seek additional medical evidence supporting Rutledge's disability claim under the "any occupation" standard.

In August 2002, Dr. Melby provided conflicting accounts of Rutledge's condition. On August 7, Dr. Melby opined that Rutledge had success with his urological issues. On August 15, 2002, Liberty Life informed Rutledge of its tentative decision not to provide benefits under the "any occupation" provision. A few weeks later and after learning about Liberty Life's decision, Dr. Melby reversed his opinion of Rutledge's urological status. Dr. Melby also recorded that Rutledge complained of numbness in his pelvic region and right lower leg, weakness, chronic pain in his

lower back, and intense discomfort if he stood for more than one hour. Dr. Melby did not prescribe any pain medication. Dr. Melby described Rutledge as "essentially [] a paraplegic, although he is able to walk."

In addition to his physical ailments, in December 2002, Rutledge reported to Dr. Melby that he suffered from periods of depression. Rutledge declined a prescription for anti-depressants. There are no records of Rutledge receiving treatment from a psychiatrist or psychologist.

While receiving "own occupation" benefits from Liberty Life, Rutledge applied for Social Security Disability Insurance Benefits. The Social Security Administration initially denied Rutledge's application in July 2002. Rutledge appealed, and an administrative law judge (ALJ) awarded Rutledge benefits in March 2003. In granting the benefits, the ALJ noted that Rutledge was scheduled to have additional procedures that might improve his medical condition and recommended Rutledge's file be reviewed within a year.

To confirm Rutledge's physical limitations, Liberty Life hired a company to conduct surveillance of Rutledge. On February 18, 2003, an investigator observed and covertly videotaped Rutledge spending five hours in a local bar. While in the bar, Rutledge consumed approximately five beers and at least one non-alcoholic beverage and went to the restroom three times. He sat for three hours before going to the restroom for the first time. The investigator saw Rutledge walking without limitation on this day and numerous other days.

Other physicians were involved in treating Rutledge's medical problems. Dr. Susan Congolisi Parker, a colorectal specialist, treated Rutledge. Dr. Parker and Dr. Siegel, Rutledge's urologist, agreed in May 2003 the only work restriction Rutledge required was access to a bathroom. Dr. Melby disagreed with this assessment and categorized Rutledge as totally disabled in May 2003.

Liberty Life referred Rutledge's file to Dr. John Holbrook, a specialist in internal medicine, for a complete review. In a report dated July 2, 2003, Dr. Holbrook noted Rutledge's medical records did not support Dr. Melby's conclusions. He found no objective medical evidence substantiating Dr. Melby's conclusion that Rutledge was essentially a paraplegic, and nothing in the file demonstrated Rutledge suffered from leg weakness or an inability to sit for more than one hour. Dr. Holbrook concluded Rutledge could work full-time in a sedentary job with minimal restrictions.

Mary O'Malley, a vocational consultant for Liberty Life, reviewed Dr. Holbrook's report. In an August 6, 2003 report, O'Malley listed a number of available jobs Rutledge would be physically capable of performing with his physical limitations. In reaching her conclusion, O'Malley considered Dr. Holbrook's conclusions as to the restrictions required for Rutledge to be able to work.

On March 29, 2004, Dr. Parker, Rutledge's colorectal specialist, performed surgery on Rutledge. Dr. Parker considered the surgery successful and informed Liberty Life on June 2, 2004, that Rutledge could work without restriction. Liberty Life then requested documentation from Rutledge to substantiate his continuing claim of disability. In response to this request, Liberty Life received a letter from Dr. Melby dated June 30, 2004. Dr. Melby stated Rutledge remained disabled due to bladder and sphincter problems, numbness in his legs, and chronic pain in his lower back. Dr. Melby also commented that Rutledge suffered from depression. Dr. Melby considered no new information in rendering this opinion: Dr. Melby last examined Rutledge in January 2003 and last spoke to him on August 5, 2003.

Rutledge completed two self-assessments of his physical condition. In April 2003, Rutledge reported he could sit for twelve hours a day, forty-five minutes to an hour at a time; stand for four hours a day, forty-five minutes to an hour at a time; and walk for one hour a day. On March 3, 2004, Rutledge reported he could sit for eight

hours a day, one hour at a time; stand for two hours, thirty minutes at a time; and walk for one hour, thirty minutes at a time. When asked what prevented him from engaging in any gainful employment, Rutledge referred only to his urological and colorectal problems; he did not mention lower back pain, numbness in his legs, or depression.

Dr. Holbrook conducted another review of Rutledge's records in July 2004. As part of his review, Dr. Holbrook contacted Dr. Parker, the colorectal specialist who performed Rutledge's surgery. Dr. Parker opined that Rutledge could work full-time with minimal restrictions. Dr. Holbrook concluded Dr. Melby's assessment and Rutledge's self-reported limitations were inconsistent with the record. Dr. Holbrook determined Rutledge was capable of working in a full-time, sedentary job, so long as he had a lifting restriction of twenty pounds and access to a bathroom.

Dr. Anthony Parisi, an orthopedic surgeon, reviewed Rutledge's file in August 2004. While his review was limited to orthopedic conditions, he concurred in Dr. Holbrook's assessment. He indicated Rutledge could work in a full-time, sedentary job with a lifting restriction of twenty to thirty pounds and no repetitive lifting, bending, or twisting.

In August 2004, Patricia Thal, a vocational case manager for Liberty Life, reviewed the report prepared by Mary O'Malley, in light of the file reviews by Drs. Holbrook and Parisi. Thal concluded O'Malley's assessment remained accurate. Like O'Malley, Thal listed a number of sedentary jobs in the economy Rutledge could perform.

On September 2, 2004, Rutledge received a phone message stating he would receive "any occupation" long-term disability benefits. However, this phone message was based upon a misreading of Thal's report, and when Rutledge's case manager realized the mistake, Liberty Life officially denied Rutledge's claim. Liberty Life

determined Rutledge was not eligible for long-term disability benefits because he did not qualify under the "any occupation" provision. Liberty Life informed Rutledge of its decision to deny his claim on October 5, 2004. In a five-page letter, Liberty Life explained the reasoning behind its decision, highlighting the opinions of Drs. Parker, Holbrook, and Parisi. The letter noted that Rutledge was capable of work as a machine operator and was therefore not entitled to "any occupation" benefits. Rutledge received long-term disability benefits throughout the time Liberty Life considered his claim.

Rutledge appealed Liberty Life's decision. As part of his appeal, Rutledge submitted medical records to Liberty Life. The materials submitted addressed Rutledge's condition from January 2001 through January 2003 – not his condition at the time his benefits were denied – and had already been provided to Liberty Life. Liberty Life denied Rutledge's appeal.

Rutledge then filed an ERISA action in the district court, seeking review of Liberty Life's denial of continuing long-term disability benefits. The court granted summary judgment to Liberty Life. The court concluded Liberty Life's decision was supported by substantial evidence and, thus, not an abuse of discretion. This appeal followed.

II.    Discussion

We review the district court's grant of summary judgment de novo. Smith v. United Television, Inc. Special Severance Plan, 474 F.3d 1033, 1035 (8th Cir. 2007). "Where, as here, an ERISA plan gives the administrator 'discretionary authority to determine eligibility for benefits,' we review the administrator's decision for an abuse

of discretion."[3]  House v. Paul Revere Life Ins. Co., 241 F.3d 1045, 1048 (8th Cir. 2001) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).

In considering whether Liberty Life abused its discretion, "we must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."  Groves v. Metro. Life Ins. Co., 438 F.3d 872, 875 (8th Cir. 2006) (internal quotation omitted). The essence of the inquiry is whether the decision is supported by substantial evidence.  See McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004) (noting that a reasonable decision is one supported by substantial evidence). We consider "both the quantity and quality of evidence" in determining whether substantial evidence supports the decision to deny benefits.  Groves, 438 F.3d at 875. Substantial evidence is "more than a scintilla, but less than a preponderance."  Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (internal quotation omitted).

Applying this deferential standard of review, we conclude substantial evidence supports Liberty Life's decision to deny Rutledge long-term disability benefits; thus, Liberty Life did not abuse its discretion.  Liberty Life considered opinions offered by Rutledge's many treating physicians and conducted multiple thorough reviews of his entire medical treatment file.  Many of Rutledge's treating physicians, including the specialists treating the problems Rutledge himself identified as preventing him from engaging in any occupation, concluded Rutledge was able to work with minimal restrictions.   Additionally, the physicians retained by Liberty Life to review Rutledge's medical file concluded Rutledge was capable of performing sedentary work with limited restrictions.

---

[3] A less deferential standard of review would apply if Liberty Life operated under a conflict of interest or engaged in procedural irregularities. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160-62 (8th Cir. 1998).  Because we conclude no such flaws existed, a more searching review is not required.

While one of Rutledge's physicians, Dr. Melby, maintained that Rutledge was completely disabled, Liberty Life was not required to accept Dr. Melby's assessment of his condition over that of Rutledge's other treating physicians or the opinions of the reviewing physicians. See, e.g., Groves, 438 F.3d at 875 (stating that plan administrator was not required to accept treating physician's assessment over that of a reviewing physician). "Where the record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled." Delta Family-Care Disability and Survivorship Plan v. Marshall, 258 F.3d 834, 843 (8th Cir. 2001). Moreover, Dr. Melby's opinion of June 30, 2004 was offered without a recent examination of or consultation with Rutledge. Dr. Melby provided no objective evidence to support his opinion. It was not unreasonable for Liberty Life to reject Dr. Melby's unsupported opinion and rely upon the opinions of Rutledge's other treating physicians, as well as those of the reviewing physicians. See Groves, 438 F.3d at 875 (upholding a plan's rejection of a treating physician's opinion when it was internally inconsistent and offered without support from objective evidence).

Rutledge argues that Liberty Life abused its discretion because: 1) it failed to consider Rutledge's medical conditions in combination; 2) it didn't consider the Social Security Administration's grant of disability benefits to Rutledge; and 3) it failed to employ an independent expert to examine and evaluate Rutledge's condition. These arguments fail. First, Liberty Life considered Rutledge's many medical conditions and his physical status as a whole in determining he did not qualify for "any occupation" long-term disability benefits. Dr. Holbrook considered all of Rutledge's ailments and the treatments he received in conducting his file reviews. Although Dr. Parisi limited his opinion to orthopedic issues, Dr. Parisi also considered Rutledge's complete medical file in conducting his review.

Second, there is no evidence in the record Liberty Life failed to consider the Social Security Administration's award of benefits. The decision was in the claim

file, and Liberty Life's decision was made based upon consideration of the entire file; Liberty Life was not required to specifically mention each document it considered in reaching its decision. In addition, the Social Security Administration's decision was of little probative value as it was rendered over a year before Liberty Life's decision to terminate benefits and before significant changes in Rutledge's medical status, including his colorectal surgery. Moreover, Liberty Life was not bound by the Social Security Administration's decision. See Farfalla v. Mutual of Omaha Ins. Co., 324 F.3d 971, 975 (8th Cir. 2003) ("[A]n ERISA plan administrator or fiduciary generally is not bound by an SSA determination that a plan participant is disabled, even when the plan's definition of disabled is similar to the definition the SSA applied.") (internal quotations and alterations omitted).

Finally, Liberty Life was free to rely upon their regular consultants and employees in considering Rutledge's claim for long-term disability benefits. An ERISA plan administrator need not order an independent medical examination when the insured's evidence supporting a disability claim is facially insufficient. See Layes v. Mead Corp., 132 F.3d 1246, 1251-52 (8th Cir. 1998). Three of Rutledge's own treating physicians – Drs. Rieser, Parker, and Siegel – all concluded he could work with minimal restrictions, and these conclusions were supported by objective medical evidence. Under these circumstances, it was not an abuse of discretion for Liberty Life not to seek an independent medical examination.

III.    Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____