# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 09-2625

—————

Kim Iann Manning,　　　　　　　　*
　　　　　　　　　　　　　　　　*
　　　　　Plaintiff - Appellant,　　*
　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　*　Southern District of Iowa.
American Republic Insurance Company,*
　　　　　　　　　　　　　　　　*
　　　　　Defendant - Appellee.　　*

—————

Submitted: January 14, 2010
Filed: May 12, 2010

—————

Before GRUENDER and SHEPHERD, Circuit Judges, and LANGE,[1] District Judge.

LANGE, District Judge.

　　　Kim Iann Manning ("Manning") was denied short-term disability benefits and subsequently terminated from employment by American Republic Insurance Company ("ARIC"). She sought judicial review of the benefits decision under the Employee Retirement Income Security Act. 29 U.S.C. § 1132 *et seq*. She also asserted ERISA retaliation and interference claims. The district court[2] affirmed ARIC's denial of

—————————————

[1]The Honorable Roberto A. Lange, United States District Court for the District of South Dakota, sitting by designation.

[2]The Honorable James Gritzner, United States District Judge for the Southern District of Iowa.

Manning's benefits claim, finding that ARIC did not abuse its discretion in determining that Manning was not disabled. In a separate order, the district court granted ARIC's motion for summary judgment on Manning's ERISA retaliation and interference claims. Manning appeals both orders. Having jurisdiction under 28 U.S.C. § 1391, this Court affirms.

## I. MATERIAL FACTS NOT SUBJECT TO GENUINE DISPUTE.

Beginning on January 31, 2005, Manning worked for ARIC as a Senior Account Specialist. Her job involved selling insurance products over the telephone and was sedentary in nature, consisting of calling prospective customers and determining their eligibility for insurance, providing insurance quotes, and data entry. Manning worked a total of 50 days for ARIC. Her last day worked was April 26, 2005.

ARIC sponsored and administered a self-funded short-term disability plan ("the Plan") for its employees. As an ARIC employee, Manning was eligible to participate in the Plan. To qualify for short-term disability benefits under the Plan, eligible employees must: (1) be covered by the Plan; (2) be under the care of an "Approved Health Care Provider"; (3) have a "Medically Certified Health Condition" that lasts longer than the short-term disability waiting period; (4) receive appropriate care and treatment for the Medically Certified Health Condition; and (5) receive approval of short-term disability benefits in accordance with the provisions of the Plan. Under the Plan, ARIC reserved the right to have claimants submit to an Independent Medical Examination ("IME") by an Approved Health Care Provider of its choice.

The Plan defines Approved Health Care Provider as: (1) licensed doctors of medicine or osteopathy; (2) licensed podiatrists, dentists, Ph.D.'s, psychologists, optometrists, or chiropractors; and (3) licensed nurse practitioners or nurse midwives.

The Plan's definition of Medically Certified Health Condition required the condition to be "[d]ocumented by objective disabling signs and symptoms."

On May 9, 2005, Manning submitted a claim for benefits under the Plan by providing a Family Medical Leave Act Certification of Health Care Provider form completed by Physician Assistant Andra Kennedy dated May 5, 2005. Kennedy reported that Manning was experiencing "elevated blood pressure," "increased frequency of migraines," and "increased anxiety." Kennedy also wrote that Manning's conditions began approximately 90 days earlier. Kennedy recommended that Manning receive short-term disability benefits for two to three months. Kennedy failed to directly answer a question on the form asking whether Manning was "unable to perform work of any kind," instead indicating that Manning should "avoid long periods of sitting or repetitive motion."

On May 12, 2005, Jodi Lanphier, an ARIC benefit specialist, called Manning to request more information regarding her claim. Lanphier told Manning that ARIC needed Manning to specify why she was unable to work. In response, Manning faxed Lanphier a document the next day, signed by Kennedy, stating "dangerously high blood pressure," "[i]ncrease in frequency, severity, and duration of migraines," and "hypertension." However, the note did not explain why those conditions prevented Manning from working for an extended period.

On May 20, 2005, Lanphier again called Manning for more information in order to process her claim. Lanphier sent Manning a letter on May 24, 2005, explaining that the Plan required claims to be completed by an Approved Health Care Provider. The letter set forth in full the Plan's definition of Approved Health Care Provider, which did not include physician assistants. The letter further notified Manning that her claim could not be considered until an Approved Health Care Provider submitted evidence of disability. The letter also explained that "[a] decision on STD eligibility will not be made until objective medical evidence to support your disability is received by the

company." Finally, Lanphier wrote that, consistent with the Plan's terms, Manning had fifteen days after receipt of the letter to submit the required information to ARIC.

On June 8, 2005, Kennedy sent ARIC a handwritten letter, attaching two medical records from office visits during which Manning was examined by Dr. Kenneth Moon. The first record, from March 11, 2005, noted that Manning's blood pressure was 148/110, that "she feels the best that she has felt in a long time," and that she could return to work the following Monday. In the second record, from April 26, 2005, Kennedy reported that Manning's blood pressure was 152/100 and that Manning felt "stressed out."

On June 16, 2005, ARIC Senior Human Resources Business Partner Gina Moeckly Vernon sent a letter to Dr. Moon requesting a telephone conversation regarding Manning's health status. Vernon attached a copy of ARIC's job description for Manning's position. On July 19, Vernon, Lanphier, and Manning participated in a conference call, during which Vernon advised Manning that she needed to speak with Dr. Moon regarding Manning's medical condition. Vernon also explained that, under the Plan's terms, ARIC could not make a determination as to Manning's claim without documentation from an Approved Health Care Provider. On July 25, Vernon sent a second letter to Dr. Moon - with a copy to Manning - requesting a telephone conference regarding Manning's claim.

On July 29, 2005, Vernon, Lanphier, and Dr. Moon participated in a teleconference to discuss Manning's condition. Dr. Moon explained that he had not examined Manning since March 2005, but that upon examination of Kennedy's records and notes, he found that Manning's blood pressure level did not require placement on disability status. Inconsistent with this statement, however, Dr. Moon said that he believed Manning would not be able to return to work due to her blood pressure and migraines. He then said that he was not able to determine Manning's

eligibility to return to work at that time, and he would require further examination to make a disability determination.

On August 6, 2005, Dr. Moon returned to ARIC a completed Certification of Health Care Provider form and notes from an August 1, 2005 examination of Manning. On the form, Dr. Moon noted that Manning had been under stress from her bankruptcy, but that the stress would likely be lifted upon the upcoming completion of the bankruptcy proceedings around September 4, 2005. He also reported that Manning's blood pressure was improving and her migraines were becoming less frequent. In response to the certification form's question, "is the employee unable to perform work of any kind," Dr. Moon answered "yes" without any explanation.

On August 8, 2005, Vernon sent Manning a letter denying her short-term disability claim. Manning appealed the determination, but she did not provide ARIC any additional information regarding her medical status. On August 29, 2005, ARIC upheld the decision denying Manning's claim and sent Manning a letter stating that it had reviewed the contents of her medical file and was upholding denial of the claim "due to lack of objective medical information that illustrates that you are disabled from performing your job duties, as defined by American Republic's Short Term Disability Plan."

Within the denial letter, ARIC informed Manning that because her claim had been denied, she had the following two options: (1) "Return to work on Wednesday, August 30, with certification from your Approved Health Care Provider that you are able to return to work"; or (2) "Provide us with objective medical information, from your Approved Health Care Provider, that you are disabled from performing your job duties." (emphasis in original). ARIC purportedly required certification of ability to return to work as part of an internal policy to shield itself from liability by ensuring that employees do not risk their health or aggravate an injury by returning to work for financial reasons.

The letter also warned Manning that ARIC expected her employment would be terminated if she failed to return to work on August 31, 2005. Manning did not return to work. ARIC terminated her employment on September 6, 2005, which was communicated to Manning through a letter stating in part:

> Because your absence is not covered by FMLA, you failed to provide objective medical information that you are disabled from performing your job duties as required by our Short-Term Disability Plan, and you have not returned to active status, your employment with American Republic is being terminated effective August 31, 2005.

Manning was ultimately released by her doctor to return to work in October 2005. She never applied for long-term disability benefits from ARIC and, even had she remained employed with ARIC, she would not have been eligible for long-term disability benefits because the six-month short-term disability period would not have expired by October 2005.

After exhausting her administrative remedies, Manning filed a complaint on May 17, 2007, bringing claims for: (1) judicial review of ARIC's denial of her short-term disability benefits under ERISA, pursuant to 29 U.S.C. § 1132(a)(1)(B); (2) an ERISA retaliation claim asserting ARIC terminated Manning based on her application for short-term disability benefits, pursuant to 29 U.S.C § 1140; and (3) an ERISA interference claim that ARIC's wrongful termination prevented Manning from obtaining future rights and benefits under ARIC's long-term disability benefits plan. Finding that ARIC did not abuse its discretion and that its decision to deny benefits was supported by substantial evidence, the district court affirmed ARIC's decision on February 24, 2009. On June 19, 2009, the district court granted summary judgment to ARIC on Manning's ERISA retaliation and interference claims. Manning appealed.

## II. STANDARD OF REVIEW.

We review de novo the district court's grant of summary judgment regarding an ERISA plan administrator's benefits determination. Wakkinen v. UNUM Life Ins. Co. of America, 531 F.3d 575, 580 (8th Cir. 2008). Summary judgment is appropriate if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005). We view the evidence and inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmovant. Id.

When a plan reserves "discretionary power to construe uncertain terms or to make eligibility determinations . . . the administrator's decision is reviewed only for 'abuse . . . of his discretion'" by the district court. King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)); see also Conkright v. Frommert, No. 08-810, 559 U.S. __ (slip. op., at 5) (Apr. 21, 2010) (following Firestone and noting that Firestone established a "broad standard of deference without any suggestion that the standard was susceptible to ad hoc exceptions"). Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious. Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 896-97 (8th Cir. 2009).

To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was "reasonable." King, 414 F.3d at 998-99. Any reasonable decision will stand, even if the court would interpret the language differently as an original matter. Id.; see also Rutledge v. Liberty Life Assurance Co., 481 F.3d 655, 659 (8th Cir. 2007) ("[W]e must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."); Midgett, 561 F.3d at 897.

However, this standard does not apply if the plan administrator has committed "a serious procedural irregularity" causing "a serious breach of the plan administrator's fiduciary duty to the claimant," in which case the court applies a less deferential standard of review. Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 837 (8th Cir. 2006) (internal citations omitted).

A conflict of interest exists when a plan administrator holds the dual role of evaluating and paying benefits claims, such as when the employer both determines eligibility for benefits and pays the benefits. Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2346 (2008). If such a conflict exists, then a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits. The significance of this factor depends on the circumstances of the particular case. Id. When an insurer has a history of biased claims administration, the conflict "may be given substantial weight." Id. When an insurer has taken steps to reduce the risk that the conflict will affect eligibility determinations, the conflict "should be given much less weight." Id.

Here, ARIC was both the evaluator of whether benefits were owed and the entity responsible for paying those benefits. The record contains evidence of neither biased claims administration nor efforts to reduce the risk of such administration. Accordingly, like in Darvell v. Life Ins. Co. of North America, 597 F.3d 929, 934 (8th Cir. 2010), the court gives the conflict some weight.

-8-

## III. DISCUSSION.

### A. ARIC's Denial of Short-Term Disability Benefits to Manning was Reasonable.

The Plan stated that the Administrator "retains the sole right to interpret and construe the terms of the STD policy and to make the final determination of the validity of each claim and the length of time for which payments, if any, shall be made." Because the Plan vested the Administrator with discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, this Court reviews ARIC's decision denying Manning's benefits claims for an abuse of discretion. See Glenn, 128 S. Ct. at 2350; King, 414 F.3d at 998-99. Therefore, ARIC's decision will stand if reasonable. King, 414 F.3d at 998-99.

To qualify for short-term disability benefits, the Plan required Manning to show that she (1) was covered by the Plan; (2) was under the care of an Approved Health Care Provider; (3) had a Medically Certified Health Condition that lasted longer than the 60 working day waiting period; (4) received appropriate care and treatment for the Medically Certified Health Condition; and (5) received approval of short-term disability benefits in accordance with Plan provisions. ARIC denied Manning's claim due to her failure to establish that she had a Medically Certified Health Condition. ARIC's decision will stand if it is reasonable, and a decision is reasonable if supported by substantial evidence. Midgett, 561 F.3d at 897 (finding that substantial evidence is more than a scintilla but less than a preponderance) (citing Schatz v. Mutual of Omaha Ins. Co., 220 F.3d 944, 949 (8th Cir. 2000)). Substantial evidence supports ARIC's decision because the records submitted to ARIC did not constitute objective medical evidence of disability. Thus, ARIC did not abuse its discretion.

First, the certification and disability opinions of the physician assistant did not satisfy the Plan's requirement that an Approved Health Care Provider certify a health

condition. The Plan's unambiguous language required Manning to demonstrate that she had a disabling health condition "as certified by an Approved Health Care Provider." The language of the Plan defined who is an Approved Health Care Provider, and a physician assistant is not an Approved Health Care Provider. Therefore, ARIC reasonably declined to consider Kennedy's opinions.

ARIC provided Manning ample notice of this deficiency in her claim. ARIC repeatedly explained to Manning what the Plan required and notified her that the opinions of a physician assistant were inadequate. Despite these notifications, Manning waited nearly three months to provide ARIC with a certification from an Approved Health Care Provider, Dr. Moon. ARIC did not abuse its discretion in declining to consider the certification or opinions of Kennedy because she was not an Approved Health Care Provider as defined by the Plan.

Manning contends that ARIC abused its discretion in rejecting Dr. Moon's opinion that Manning was disabled. Dr. Moon, after providing inconsistent opinions in a phone conference on July 29, 2005, later offered a conclusory opinion that Manning's hypertension and migraines rendered her to be disabled. However, the Plan required more. Under the Plan, an allegedly disabling medical condition needed to be documented by "objective disabling signs and symptoms."

As explained by Lanphier in a letter to Manning dated May 24, 2005, objective medical evidence includes "data and records from your attending Approved Health Care Provider, narrative reports, x-rays, and laboratory findings and consulting Approved Health Care Provider reports." The Plan required this information "at the inception of [Manning's] STD claim and periodically thereafter as requested by the enterprise."

Neither Manning nor Dr. Moon submitted objective evidence that Manning was disabled by hypertension. Hypertension can be objectively measured by blood

-10-

pressure readings. The record contains only four specific blood pressure readings, and only one of the reports characterized Manning's blood pressure as high. This reading occurred on April 26, 2005, during a period in which Manning independently decided to discontinue her blood pressure medication. Manning submitted no other documentation of high blood pressure or any information regarding the intensity or duration of any hypertension. On June 2, 2005, Dr. Moon reported that Manning had a "good" blood pressure reading that would not warrant placing her on disability status. Additionally, the one blood pressure reading characterized as high was procedurally insufficient to establish her entitlement to benefits. Manning elected a 60-business-day waiting period, and the sixtieth business day after Manning's claimed disability onset date of April 27 was in late-July. Even if Manning experienced high blood pressure in April, she presented ARIC with no evidence that this condition continued after the waiting period.

Manning's migraines - and their allegedly debilitating nature - were not documented by objective disabling signs and symptoms either. Her medical records established that her migraines could be controlled with medication. Dr. Moon's reports did not address the nature, duration or severity of the headaches, whether the migraines could be disabling over an extended period of time, or how they could render her unable to perform work of any kind.

In summary, ARIC did not receive objective evidence of disabling signs and symptoms from Dr. Moon. Rather, Dr. Moon provided a subjective opinion, with no explanation regarding how Manning's condition might prevent her from performing her regular job duties, which ARIC had described in writing to Dr. Moon. ARIC reasonably requested Manning to supplement her claim with objective medical evidence of disability, but none was provided. Consequently, ARIC reasonably denied Manning's claim for insufficient evidence of a medically certified health condition.

**B.     ARIC's Request for Objective Medical Evidence and Decision not to Conduct an Independent Medical Examination did not Constitute a Procedural Irregularity.**

Manning contends that ARIC's disregarding of Dr. Moon's opinion without conducting an IME amounted to a procedural irregularity, requiring this court to apply a less deferential standard of review of ARIC's decision. ARIC counters that because Manning provided no objective medical evidence of disability, it was not required to conduct an IME to rebut the opinion prior to denying her claim. Hence, the issue at hand is whether ARIC should have obtained an IME prior to denial of Manning's claim.

Generally, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." Johnson v. Metro. Life Ins. Co., 437 F.3d 809, 813 (8th Cir. 2006) (quoting McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 925 (8th Cir. 2004)); see also Rutledge v. Liberty Life Assurance Co. of Boston, 481 F.3d 655, 661 (8th Cir. 2007); Pralutsky, 435 F.3d at 839-40; Groves v. Metro. Life Ins. Co., 438 F.3d at 875. In Johnson, the plan required objective medical evidence of disability, which the claimant argued created a procedural irregularity, justifying a less deferential standard of review than the ordinary abuse of discretion. Johnson, 437 F.3d at 813. The court, however, applied the abuse of discretion standard and held that the plan administrator acted reasonably in denying benefits based on its interpretation of the plan language and the absence of objective evidence of allegedly disabling fibromyalgia. Id.

Similar to the facts in Johnson, Manning argues that a less deferential standard of review applies because ARIC arbitrarily decided to require objective medical evidence rather than relying solely on consideration of Dr. Moon's subjective opinion. However, as in Johnson and Pralutsky, the administrator reasonably interpreted the plan to require objective medical evidence to prove the claimant's disability. ARIC's

interpretation requiring objective medical evidence did not constitute a procedural irregularity and does not trigger a less deferential standard of review.

Manning next argues that ARIC abused its discretion by not performing an IME. However, it is not an abuse of an ERISA plan administrator's discretion "to ignore an opinion when the physician did not 'provide reliable objective evidence of testing or other proof to support the finding'" of disability. Darvell, 597 F.3d at 935 (quoting McGee, 360 F.3d at 924-25). A plan administrator is not required to order an IME when the claimant's evidence is facially insufficient to support a finding of disability. Rutledge, 481 F.3d at 661 (8th Cir. 2006) (citing Layes v. Mead Corp., 132 F.3d 1246, 1251-52 (8th Cir. 1998)). This case is similar to Groves, where a treating physician stated that the claimant "may be able to perform at the sedentary level" and then later said that claimant was "incapable of even the most sedentary occupation." 438 F.3d at 875. Because the doctor's opinion provided no reliable objective evidence, such as testing, to support the finding, this Court found that "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence. Id. (quoting Pralutsky, 435 F.3d at 839).

The five factors set out in Finley v. Special Agents Mut. Benefit Ass'n, 957 F.2d 617, 621 (8th Cir. 1992), guide the Court in determining the reasonableness of a plan administrator's interpretation of a plan. The factors are the following: (1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation. Id. However, "the dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own - and therefore cannot disturb as an

-13-

abuse of discretion the challenged benefits determination." Darvell, 597 F.3d at 935 (citation omitted).

All five Finley factors support ARIC's interpretation of the Plan. First, the requirement of objective medical evidence of disability is not only consistent with the language of the Plan, but also is expressly required for short-term disability eligibility. Second, the substantive and procedural requirements of ERISA do not prohibit a plan administrator from asking for a certain quality or quantity of information from claimants. Third, ARIC's interpretation does not render any language in the plan meaningless or internally inconsistent. Fourth, ARIC's interpretation is consistent with the Plan's goal "to provide [its employees] with income replacement in the event [an employee is] unable to perform some or all of [his or her] job duties due to a Medically Certified Health Condition that extends beyond the STD elimination or waiting period." This goal is consistent with the requirement of requiring objective evidence, as such a requirement will allow only claimants who are unable to perform some or all job duties with income replacement. Finally, Manning submitted no evidence suggesting that ARIC does not require all applicants for short-term benefits to provide objective medical evidence of disability.

C.    **Summary Judgment was Appropriate on the ERISA Retaliation and Interference Claims**.

Section 510 of ERISA makes it unlawful for an employer to discharge a participant in an employee benefit plan "for exercising any right to which he is entitled under the provisions of an employee benefit plan" (retaliation) or "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan" (interference). 29 U.S.C. § 1140. An ERISA-based retaliation or interference claim can be established through direct evidence, or in the absence of direct evidence, through the McDonnell Douglas three-part burden-shifting framework common to Title VII and Age Discrimination in Employment Act cases.

-14-

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1035 n.7 (8th Cir. 2007) (holding because "[plaintiff's] ERISA claim is based on alleged circumstantial evidence . . . [the Court analyzes the claim] under the McDonnell Douglas framework.") (citing Kinkead v. Sw. Bell Tel. Co., 49 F.3d 454, 456-57 (8th Cir. 1995). Under this framework, if a claimant is able to establish a prima facie case of a section 510 violation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Rath v. Selection Research, Inc., 978 F.2d 1087, 1089 (8th Cir. 1992). If the employer does so, then the burden shifts back to the claimant to prove that the proffered reason is pretextual. Id. at 1089-90.

Manning provided no direct evidence that ARIC terminated her either in retaliation for making an ERISA benefits claim or in interference with any right to attain future benefits. Manning argues that ARIC's August 29, 2005 letter constitutes direct evidence of a section 510 violation, claiming it presented her with a "Hobson's choice," in which she had to choose between relinquishing her short-term disability claim and giving up her job. See Lindemann v. Mobil Oil Corp., 141 F.3d 290, 298 (7th Cir. 1998). However, by its own terms the letter did not require Manning to make such a choice. Rather, the letter communicated that she could still receive benefits for the time period between April 26 and August 31 if she either reported for work with a note from an Approved Health Care Provider certifying medical ability to work, or she did not report for work and produced a note from an Approved Health Care Provider containing objective medical evidence supporting her short-term disability claim. According to ARIC's policy, obtaining a work release would not have prevented Manning from continuing to pursue her short-term disability claim. The record contains no direct evidence that ARIC ordered Manning to give up her past short-term disability benefits claim or risk termination. Additionally, section 510 does not prevent ARIC from implementing and executing legitimate business interests under ERISA, such as terminating an employee due to job abandonment or excessive absenteeism. Id. ("[S]ection 510 is not intended to prevent an employer from firing

-15-

an employee due to excessive absenteeism which ultimately harms productivity, but to prevent that employer from discharging or harassing an employee with the specific intent of preventing the employee from obtaining vested pension rights.").

ARIC's request for a medical certification form does not constitute direct evidence of a section 510 violation, as such a request does not establish a causal link between the alleged discriminatory animus and the challenged decision denying benefits. See Krensavage v. Bayer Corp., 314 Fed. Appx. 421, 426 (3d Cir. Jan. 22, 2008) (affirming summary judgment on a section 510 claim because "[t]he undisputed facts [were] that [the employee] did not receive medical clearance to return to work . . ."). Therefore, to have her section 510 claim survive summary judgment, Manning must establish a prima facie case under the McDonnell Douglas framework.

To establish a prima facie case of ERISA retaliation, Manning must prove: (1) she participated in a statutorily protected activity (i.e., making a reasonable claim for ERISA benefits); (2) an adverse employment action was taken against her; and (3) a causal connection existed between her participation in a statutorily protected activity and an adverse employment action. See Curby v. Solutia, Inc., 351 F.3d 868, 871 (8th Cir. 2003). Here, it is undisputed that Manning has satisfied the first two elements, so she can establish a prima facie case of retaliation if she has demonstrated a causal connection between her application for ERISA benefits and her termination. See Kinkead, 49 F.3d at 456. A causal connection may be based upon circumstantial evidence. Id.

Manning cites the following as evidence showing the existence of a causal connection: (1) ARIC required a medical release from Manning's Approved Health Care Provider before she could return to work; (2) this requirement was not pursuant to a written policy; and (3) ARIC's unwritten policy constitutes a post-hoc justification for termination. However, none of this demonstrates that ARIC terminated Manning's employment because she sought short-term disability benefits. As discussed above,

that ARIC required Manning to obtain a work release prior to returning from a four-month absence is not evidence of ERISA retaliation. This was not an illegitimate requirement under the circumstances. Therefore, the district court properly held that Manning failed to present a prima facie case of retaliation under section 510.

To establish a prima facie case of ERISA interference, Manning must show that (1) ARIC subjected her to an adverse employment action; (2) Manning was likely to receive future benefits; and (3) a causal connection existed between the adverse action and the likelihood of future benefits. See Fischer v. Anderson Corp., 483 F.3d 553, 556 (8th Cir. 2007). In order to establish a claim for interference with prospective benefits, Manning must prove that ARIC possessed "a specific intent to interfere" with her ERISA benefits. See Pendleton v. QuikTrip Corp., 567 F.3d 988, 992 (8th Cir. 2009) (citing Register v. Honeywell Fed. Mfg. & Techs., LLC, 397 F.3d 1130, 1137 (8th Cir. 2005)).

Manning admitted that she was ineligible for long-term disability benefits because she was released to return to work in October 2005. Because Manning was never eligible for long-term disability benefits, she cannot establish a prima facie case of ERISA interference. See Feldman v. Am. Mem'l Life Ins. Co., 196 F.3d 783, 792 (7th Cir. 1999) (affirming summary judgment denying claim because plaintiff was not a member of the protected class for long-term disability benefits).

Assuming arguendo that Manning had presented a prima facie section 510 case, the McDonnell Douglas framework would require ARIC to provide a legitimate, nondiscriminatory reason supporting Manning's termination. See Rath, 978 F.2d at 1089. As the reason for termination, ARIC cited Manning's absenteeism for four months without any form of recognized leave. Absenteeism constitutes a legitimate, non-discriminatory reason for termination. See Kinkead, 49 F.3d at 456; see also Godfrey v. BellSouth Telecommc'ns. Inc., 89 F.3d 755, 759 (11th Cir. 1996) (noting that "an employer may demand that an employee return to work after determining that

-17-

the employee is not disabled, and then discipline the employee for unexcused absences").

Because ARIC provided a legitimate, non-discriminatory reason supporting Manning's termination, the burden would shift to Manning, under the McDonnell Douglas analysis, to demonstrate that ARIC's purported reason for her termination was pretextual. See Pendleton, 567 F.3d at 992. Manning failed to generate any genuine issue of material fact that ARIC's stated reasons for her termination were pretextual. Manning's assertion that ARIC retaliated or interfered is based solely on conjecture and undermined by the record. See Jefferson v. Vickers, Inc., 102 F.3d 960, 964 (8th Cir. 1997) (a plaintiff cannot prove an ERISA claim through "mere conjecture."). As a result, the district court properly held that ARIC's reason for terminating Manning's employment was not pretext for retaliation or interference under ERISA.

For the foregoing reasons, we affirm the judgment of the district court.

_____