**Sue EVANS, Plaintiff,**

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.**

No. 4:10–cv–00054–JEG.

United States District Court, S.D. Iowa, Central Division.

April 25, 2011.

---

Fredd J. Haas, Haas Law Offices PC, Des Moines, IA, for Plaintiff.

Kermit B. Anderson, Finley Alt Smith, Scharnberg Craig, Hilmes & Gaffney PC, Des Moines, IA, for Defendant.

## ORDER

JAMES E. GRITZNER, District Judge.

This matter comes before the Court on Plaintiff Sue Evans' (Evans) petition for judicial review of Defendant United of Omaha Life Insurance Company's (United of Omaha) decision to deny Evans long-term disability (LTD) benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. This Court reviews the plan administrator's decision pursuant to 29 U.S.C. § 1132(a)(1)(B). Evans is represented by Fredd J. Hass. United of Omaha is represented by Kermit B. Anderson. The Court finds that no hearing is necessary. This matter is fully submitted and ready for disposition.

## I. BACKGROUND

Jim Hawk Truck Trailers employed Evans as an office manager and provided her with a policy for short-term disability (STD) and LTD insurance (the Plan). The insurer, United of Omaha, had "discretion to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." [1] A.R. 6.

On June 13, 2008, after a confrontation with her boss, Evans left work because she felt like she was having a nervous breakdown. As a result of the confrontation, Evans did not return to work. On June 16, 2008, Evans saw Valerie Stratton, D.O. (Dr. Stratton) at Delaware Family Medicine and reported that her employer wanted her to sign papers admitting to things she did not do and stated that she had been stressed for many years. Dr. Stratton's exam indicated that Evans appeared healthy, but her mood was sad and tearful. Dr. Stratton's initial assessment was "stress/dep[ression]/anxiety." A.R. 888.

On June 19, 2008, Diane Walsh (Ms. Walsh), a licensed social worker with Mercy Psychiatric Services, evaluated Evans and recorded diagnostic codes for major depressive disorder, recurrent, severe without psychotic features (DSM–IV 296.33), and panic disorder without agoraphobia (DSM–IV 300.01). Ms. Walsh assigned Evans a Global Assessment of Functioning (GAF) score of 50.[2] Thereaf-

---

1. The Plan also provides as follows: "By purchasing the Policy, the Policyholder grants [United of Omaha] the discretion and the final authority to construe and interpret the Policy. This means that [United of Omaha] ha[s] the authority to decide all questions of eligibility and all questions regarding the amount and payment of any Policy benefits within the terms of the Policy as interpreted by [United of Omaha]." A.R. 46.

2. The GAF is "a 0–100 score given by mental-health professionals to subjectively rate the social, occupational, and psychological function of adults...." *Kluesner v. Astrue,* 607

F.3d 533, 535 (8th Cir.2010). GAF scores of 41–50 mean "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (text rev., 4th ed. 2000). GAF scores of 51–60 mean "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

ter, Evans continued regular therapy sessions with Ms. Walsh, whose notes report Evans' ongoing difficulties and anxiety about leaving the house. Evans reported some improvement on August 8, 2008, and Ms. Walsh assigned Evans a GAF score of 55 on February 10, 2009.

On August 18, 2008, psychiatrist Sharon Koele, M.D. (Dr. Koele) performed a psychiatric evaluation of Evans, noting that during her mental status examination Evans

> was alert and oriented times three. The patient had good grooming and hygiene. She arrived early for her appointment. Her mood was neutral and her affect was full, reactive, and appropriate. She did appear slightly anxious at the beginning of our interview, but this seemed to improve over the course of the interview.... Her insight, judgment, and memory all appeared to be intact.

A.R. 110. Based upon that exam, Dr. Koele assigned Evans a GAF score of 55. Dr. Koele evaluated Evans four more times between August 18, 2008, and March 18, 2009, noting similar mental status examinations with the exception that Evans' affect was tearful during those appointments.

On March 10, 2009, Evans applied to United of Omaha for STD benefits. On March 25, 2009, United of Omaha denied Evans' STD claim because the claim did not comply with the ninety-day filing requirement in the STD policy. Included with Evans' application were letters from Dr. Stratton, Dr. Koele, and Ms. Walsh, wherein all checked the space provided for "Yes" in response to the question, "In your opinion, to a reasonable degree of medical certainty, is Sue Evans currently temporarily and totally unable to engage in substantial gainful employment at Jim Hawk Truck Trailers, Inc., or any other place of employment due to her diagnosed [condition]?" A.R. 831, 834, 837.

On March 20, 2009, United of Omaha sent a letter advising that it had received Evans' LTD claim application. The Plan defined disability as follows:

> **Disability** and **Disabled** mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
> (a) prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis ...; and
> (b) unable to generate Current Earnings which exceed 80% of Your Basic Monthly Earnings due to the same Injury or Sickness.

A.R. 17. United of Omaha requested and received Evans' job description and earnings information from Jim Hawk Truck Trailers. United of Omaha also requested medical records from Delaware Family Medicine and Dr. Koele.

On April 16, 2009, United of Omaha completed an occupational analysis of Evans' job description and concluded that Evans' "occupation is a SEDENTARY physical demand occupation." A.R. 983. On May 5, 2010, licensed mental health practitioner Sadie Burr (Ms. Burr) reviewed Evans' medical records to answer the question, "Please review and identify the physical capacity [Evans] is capable of performing. In addition, please identify any specific restrictions and limitations." A.R. 985. Ms. Burr outlined the medical records from Dr. Stratton and Dr. Koele and concluded that "[r]eview of the records does not support a global psychiatric impairment that would preclude Ms. Evans from performing the essential duties of her occupation." A.R. 987.

On May 19, 2009, United of Omaha denied Evans' claim for LTD benefits, stating that "the documentation does not support the inability for you to perform the essential duties of your occupation." A.R.

846. Evans appealed the denial of benefits on June 11, 2009, and submitted additional medical records on July 17, 2009.

As part of the appeal review, United of Omaha referred Evans' claim file to board certified psychiatrist Stephen Gerson, M.D. (Dr. Gerson) for review. Dr. Gerson, in a written report dated November 13, 2009, summarized Evans' medical records and opined that when Evans "went out of work, she had mild to moderate symptoms of anxiety which began to increase in approximately March 2009." A.R. 69. Dr. Gerson also reported, "in my opinion the restrictions and limitations placed on [Evans'] work activities by the treating professionals were not reasonable and consistent with the clinical findings" and that the clinical evidence did not support psychiatric or psychological impairment of functioning or medical restrictions that would have prevented Evans from performing the functions of her occupation. A.R. 70, 71.

In a final decision dated December 28, 2009, United of Omaha upheld its denial of benefits. After outlining the medical records, the decision stated that "the medical documentation does not support restrictions and limitations due to any functional or psychological impairment that would have prevented Ms. Evans from performing the material duties of her occupation and does not support Total Disability as defined by her policy." A.R. 61.

On February 8, 2010, Evans filed this lawsuit, seeking administrative review of United of Omaha's decision and an award of LTD benefits.

## II. DISCUSSION

### A. Standard of Review

■ For claims arising under ERISA challenging a denial of benefits, the applicable standard of review is *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the plan grants discretionary authority to determine eligibility for benefits or to construe uncertain terms, then abuse of discretion is the appropriate standard of review. *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir.2010) (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998–99 (8th Cir. 2005) (en banc)). The Plan in this case grants United of Omaha discretionary authority. Consequently, the Court applies the abuse of discretion standard of review.

■ "Under the abuse of discretion standard, the court must affirm the plan administrator's interpretation of the plan unless it is arbitrary and capricious." *Id.* The Court "must defer to [United of Omaha's] interpretation of the plan so long as it is reasonable, even if the court would interpret the language differently as an original matter." *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 954 (8th Cir.2010) (quoting *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir.2010)) (internal quotation marks omitted). To determine whether United of Omaha's interpretation of the Plan is reasonable, the Court is guided by the following factors:

> (1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation.

*Manning*, 604 F.3d at 1041–42 (citing *Finley v. Special Agents Mut. Benefit Ass'n*, 957 F.2d 617, 621 (8th Cir.1992)).

■ The Court "will not disturb the administrator's decision if the administrator makes a reasonable interpretation of uncertain terms in a policy, and the decision based on that interpretation is supported by substantial evidence." *Seitz v. Metro. Life Ins. Co.*, 433 F.3d 647, 650 (8th Cir.2006) (citing *King*, 414 F.3d at 999). Substantial evidence means "more than a scintilla but less than a preponderance" of evidence exists to support the decision, *Khoury*, 615 F.3d at 952 (quoting *Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 583 (8th Cir.2008)), and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *McGee v. Reliance Std. Life Ins. Co.*, 360 F.3d 921, 924 (8th Cir.2004) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

## B. United of Omaha's Interpretation of the Plan

■ Evans argues that United of Omaha abused its discretion because it "increased the burden set by the [Plan] in its application to [Evans]" by placing on her the burden of showing that she was unable to perform more than one of the essential duties of her occupation, whereas the Plan only requires that she be unable to perform at least one of the material duties of her occupation. Pl.'s Br. 10, ECF No. 8.

Under the Plan, a person is disabled if she is "prevented from performing at least one of the Material Duties" of her regular occupation due to injury or sickness causing a significant change in her mental or physical functional capacity. A.R. 17. United of Omaha denied Evans benefits because "the medical documentation does not support restrictions and limitations

due to any functional or psychological impairment that would have prevented Ms. Evans from performing the material duties of her occupation and does not support Total Disability as defined by her policy." A.R. 61.

The inability to perform at least one of the material duties of her occupation means that Evans would be considered disabled if she could not perform one or more of the material duties of her occupation. Thus, to be found not disabled under the Plan, Evans must have been able to perform all of the material duties of her occupation. Since the language "the material duties of her occupation" is inclusive language indicating that United of Omaha determined that Evans could perform *all* of the material duties of her occupation, it is not contrary to the Plan requirement that she be unable to perform at least one of the material duties of her occupation to be found disabled under the Plan. A.R. 61. Thus, United of Omaha's language is not contrary to the clear language of the Plan nor does it render any Plan language meaningless or internally inconsistent.

■ Evans also argues that United of Omaha's denial was unreasonable because it relied on the STD benefits denial by " 'copy and paste' activity that can be seen in the initial LTD denial letter . . . and the lack of STD analysis records within the file." Pl.'s Br. 11, ECF No. 8. STD analysis records are irrelevant to the Court's current review. "Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision." *Khoury*, 615 F.3d at 952 (citing *Galman v. Prudential Ins. Co. of Am.*, 254 F.3d 768, 770–71 (8th Cir.2001)). The final LTD denial letter uses somewhat different language from the initial decision to deny Evans' claim, diminishing the impact of Evans' argument.[3] Thus, the final deci-

---

3. The language of the final decision is "the medical documentation does not support re-

strictions and limitations due to any function-

sion does not indicate any copy and past activity, nor does the Court see why such activity would, in isolation, necessarily be arbitrary and capricious.

Moreover, even if United of Omaha had engaged in "copy and past activity," Evans has not shown how it conflicted with ERISA requirements, how United of Omaha's interpretation was inconsistent with the goals of the plans, or how United of Omaha had inconsistently followed its interpretation that requires a person to be prevented from performing the material duties of her occupation. Thus, the Court concludes that the factors guiding the Court's reasonableness inquiry support the conclusion that United of Omaha's interpretation of the Plan was not unreasonable, and therefore United of Omaha did not abuse its discretion. *See Manning*, 604 F.3d at 1041–42 (plan administrator's interpretation of the plan was not unreasonable when all five *Finley* factors supported the interpretation).

### C. United of Omaha's Denial of Evans' LTD Benefits

Evans next argues that when all of the facts are considered, United of Omaha abused its discretion in denying her LTD benefits claim. Evans alleges that United of Omaha's conflict of interest and failure to seek an independent medical examination show an abuse of discretion.

#### 1. Conflict of Interest

 A conflict of interest exists when a plan administrator "both evaluates claims for benefits and pays benefits claims" and "is 'one factor among many that a reviewing judge must take into account' when determining whether a plan administrator has abused its discretion in denying benefits." *Khoury*, 615 F.3d at 953 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 116, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)). A conflict of interest should be given more weight when a plan administrator has a history of biased claims but less weight if the plan administrator has taken active steps to reduce potential bias and promote accuracy. *Id.* at 953–54.

 United of Omaha evaluates claims and pays benefits, thus a conflict of interest exists. However, the record contains no evidence of United of Omaha's claims administration history aside from Evans' claim or of any efforts to reduce potential bias and promote accuracy. Therefore, the Court is "required to give the conflict some weight, but the existence of the conflict alone is not determinative." *Id.* at 954; *see also Manning*, 604 F.3d at 1039 (holding that when the record contains no evidence of biased claims administration nor efforts to reduce the risk of bias, the court gives a conflict of interest some weight); *Darvell*, 597 F.3d at 934 (same).

#### 2. Independent Review of Medical Records

 While the failure to obtain an independent medical review may contribute to an abuse of discretion finding, "case law contains no such absolute requirement." *Torres v. UNUM Life Ins. Co. of Am.*, 405 F.3d 670, 678 (8th Cir.2005). Evans initially argues that United of Omaha should have ordered an independent medical *examination* (IME) but does not indicate where the Plan or the law requires an

---

al or psychological impairment that would have prevented Ms. Evans from performing the material duties of her occupation;" whereas, the language of the initial decision is "the documentation does not support the inability for you to perform the essential duties of

your occupation;" and the language from Ms. Burr's review is "review of the records does not support a global psychiatric impairment that would preclude Ms. Evans from performing the essential duties of her occupation." A.R. 61, 846, 987.

IME and merely cites *Torres,* which acknowledged an argument concerning the failure to obtain an independent medical *review* but did not indicate what affect such a failure should have on the Court's analysis. *Id.* Evans additionally argues that United of Omaha should have requested an independent medical *evaluation.* The record is inconsistent with Evans' argument, as Dr. Gerson independently reviewed Evans' medical records. Here, an independent review of Evans' medical records was not required, much less an IME, but United of Omaha nonetheless requested and evaluated an independent review, which does not contribute to an abuse of discretion finding.

Furthermore, having concluded that "[a] plan administrator is not required to order an IME when the claimant's evidence is facially insufficient to support a finding of disability," *Manning,* 604 F.3d at 1041 (citing *Rutledge v. Liberty Life Assurance Co. of Boston,* 481 F.3d 655, 661 (8th Cir. 2007)), the *Manning* court held that the lack of reliable objective evidence, such as testing, to support a doctor's finding of disability made it "not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence," *id.* (quoting *Groves v. Metro. Life Ins. Co.,* 438 F.3d 872, 875 (8th Cir.2006)).

Here, Dr. Stratton did not cite any objective evidence when she opined that Evans was disabled. Dr. Koele and Ms. Walsh both indicate that Evans was unable to leave the house in support of their opinions that Evans is disabled but provided no objective medical findings to support their conclusion. Indeed, Dr. Gerson, upon reviewing all of the medical records submitted to Mutual of Omaha, noted that "[t]here is no clinical evidence in [Ms. Walsh's] documentation at any point to support severity indicators of major depression such as acute suicidality, cognitive impairment, inability to take care of her-

self or psychomotor retardation." A.R. 69. Commenting on Dr. Koele's notes, Dr. Gerson stated, "[m]ental status is reported as unremarkable throughout all of [Evans'] sessions [with Dr. Koele] well into 2009. However, as of 1/13/09, [Evans'] depression, panic disorder, tendency to isolate increase somewhat, but her mental status continues to have no severity indicators noted." *Id.* Dr. Gerson then concluded,

> Though [Evans] ha[d] symptoms of anxiety and depression from the time she went out of work, in my estimation, they didn't rise to a level of severity that was impairing.... [Evans] went out of work because she was anxious and angry; and although she did have symptomatology of depression and anxiety as well as some symptoms of [post-traumatic stress disorder], symptoms were not so severe that she couldn't have managed them and performed the functions of her occupation. In my opinion her symptoms of anxiety were not severe because there was no formal treatment approach other than psychopharmacology developed to interdict these panic attacks. There was no indication of conventional exposure and behavioral desensitization to help her manage her anxiety symptoms. She was able to drive a car, go on vacation, do some shopping and participate in family activities.

A.R. 70.

In *McGee,* a case with competing opinions similar to this case, an insurer terminated LTD benefits to a claimant after determining that, shortly after approving benefits, the claimant was no longer eligible. *McGee,* 360 F.3d at 923. The determination was based on medical records of the claimant's two treating physicians and a reviewing physician. *Id.* at 923–25. The *McGee* court held that the insurer "was not obligated to accord special deference to

964

the opinion of ... the treating physician[ ] over the conflicting opinion of ... the reviewing physician." *Id.* at 925 (citing *Black & Decker Disab. Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) (holding that the treating physician rule does not apply to disability determinations under ERISA benefits plans)). The *McGee* court then found that it was not unreasonable for the insurer to reject the "reasoned opinion" of the treating physician in favor of the opinion of the reviewing physician, which provided substantial evidence to support the insurer's decision to terminate benefits. *Id.* (citing *Delta Family–Care Disab. & Survivorship Plan v. Marshall,* 258 F.3d 834, 843 (8th Cir. 2001)). Likewise, here United of Omaha relied on the opinion of Dr. Gerson, the reviewing physician, over Evans' treating physicians, Dr. Koele and Dr. Stratton, in determining that Evans did not qualify for LTD benefits. As in *McGee,* it was not unreasonable for United of Omaha to rely on Dr. Gerson's report to support a denial of benefits, especially in light of the lack of objective medical evidence in Dr. Koele's and Dr. Stratton's records to support a finding of disability. *See Manning,* 604 F.3d at 1041 (holding that it is not unreasonable to deny benefits when objective evidence to support a finding of disability is lacking). Dr. Gerson's report extensively documents Evans' relevant medical records and is evidence that a reasonable mind would accept as adequate to support a denial of Evans' LTD benefits claim. *See McGee,* 360 F.3d at 924.

Based on the foregoing, the Court concludes that more than a scintilla of evidence supports United of Omaha's decision, and, although the Court accords some weight to the conflict of interest here, that factor alone is not enough to compel the Court to find that United of Omaha's denial was unreasonable. Therefore, because the decision to deny LTD benefits was supported by substantial evidence, the Court cannot find that United of Omaha abused its discretion. *See Seitz,* 433 F.3d at 650.

## III. CONCLUSION

Within the limitations of the applicable standard of review, the Court finds United of Omaha's interpretation of the Plan was not unreasonable, and its decision to deny benefits was supported by substantial evidence; therefore, United of Omaha did not abuse its discretion. Accordingly, Defendant United of Omaha's decision to deny benefits must be **affirmed.**

**IT IS SO ORDERED.**