# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 18-2821

———————————————

Sharon Engle

*Plaintiff - Appellee*

v.

Land O'Lakes, Inc.; Unum Life Insurance Company of America

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the Western District of Missouri - Joplin

——————————

Submitted: April 16, 2019
Filed: September 3, 2019

——————————

Before SMITH, Chief Judge, ARNOLD and KELLY, Circuit Judges.

——————————

ARNOLD, Circuit Judge.

This is an action under the Employment Retirement Income Security Act, *see* 29 U.S.C. § 1001 *et seq.*, for a declaratory judgment that the administrator of group insurance plans paid benefits to the wrong person. Administrators of ERISA plans are frequently given the discretion to interpret those plans and to make benefits determinations. This case involves just how much deference courts must afford a plan administrator who exercises that discretion.

Terry Engle was an employee of Land O'Lakes, Inc., when he tragically died in a car crash. As an employee of Land O'Lakes, Engle had both life insurance and insurance for accidental death provided by Unum Life Insurance Company of America. Under the terms of those plans, Land O'Lakes was designated the fiduciary and plan administrator, but it delegated to Unum the discretion to interpret the plans and to make benefit determinations. Unum's authority included "determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan."

The plans specify that, when, as here, there is no designated beneficiary, payments will be made, in Unum's discretion, either to the decedent's estate or to surviving family members in a designated order, starting with a spouse, then to children, and then to parents. After Engle died, Unum wrote a letter to his mother, Sharon Engle (whom we will call "Sharon" to avoid confusion), and sought her help in identifying a beneficiary. Unum told Sharon that the information she provided would form the basis of its decision regarding whom to pay. With that understanding, Sharon explained that Engle did not have an estate and that none would be opened for him. She also noted that, though Engle was unmarried at the time of his death, he was survived by two minor children and one Jaclyn Jones, a woman whom Sharon identified as Engle's domestic partner.

Apparently of the view that a domestic partner could count as a spouse under the plans, Unum asked Jones to complete an affidavit verifying that she was Engle's domestic partner. That same day, Sharon spoke with a Unum representative by phone. Notes from the call show that Sharon inquired about the status of the insurance claims, and Unum advised her that it needed Jones to complete an affidavit, which Sharon said she understood. She then asked if "domestic partner" meant something similar to common-law marriage, and the Unum representative opined that it did. The call notes say Sharon then "stated good" because "Terry & Jaclyn lived together & were to be

married." Sharon asked how much longer claims processing would take, and when the Unum representative explained it would not take long and that no additional information (besides Jones's affidavit) was needed, Sharon "understood & call ended cordially." Jones soon returned a completed affidavit to Unum, and shortly thereafter Unum paid her $266,000 under the life and accidental-death plans.

All appeared well until Sharon contacted Unum about three months later to complain that it had paid Jones rather than Engle's children. She then opened an estate for Engle and became its personal representative. When Sharon sued Land O'Lakes and Unum on behalf of Engle's estate in Missouri state court, seeking a declaratory judgment that Unum should have paid Engle's estate rather than Jones, the defendants removed the case to federal court. That court remanded the case to Unum to develop the record further: Unum did so and upheld its earlier decision to give the benefits to Jones.

Back in federal court, the parties moved for summary judgment. The district court sided with Sharon and held that Unum had adopted an unreasonable interpretation of the plans to support its decision to pay Jones rather than Engle's estate. We review the district court's decision de novo. *See Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010).

The crux of the parties' dispute is whether Unum reasonably interpreted the plans as allowing it to pay a decedent's domestic partner in the absence of a designated beneficiary. As we noted before, the plans provide that Unum may pay benefits to a decedent's estate or "spouse," if he had one. When Unum made the payments it was operating under Sharon's assurance that Engle did not and would not have an estate, so it was reasonable for Unum to determine whether Engle had a "spouse." The parties dispute whether the word "spouse," as used in this portion of the plans, encompasses domestic partners.

Unum thought so even though the plans' glossary contained no definition for the word "spouse." Unum relied instead on a reference to "spouse" found elsewhere in the plans. Under a heading delimiting what dependents are eligible for life-insurance coverage, the plan specifies that a "spouse" is eligible and that "'[s]pouse' wherever used includes domestic partner." That same "spousal enlargement language," as the district court termed it, makes an encore under the heading delimiting what dependents are eligible for accidental-death coverage.

Unum interprets the phrase "wherever used" broadly to mean that the term "spouse" includes a domestic partner even in the provisions involving the payment of benefits. The district court read an implied limit into the spousal-enlargement language and held that the phrase "wherever used" meant only wherever the word "spouse" appeared under the headings relating to insurance coverage, and not to benefits. After all, the district court reasoned, if Unum wanted "spouse" to include domestic partners throughout the plans, then it could have said so in the glossary. The district court rightly pointed out, moreover, that if the phrase "wherever used" is taken literally, then there was no need for Unum to use the enlargement language twice.

The district court certainly adopted a reasonable reading of the plans, though its interpretation is not without its own difficulties. For example, its interpretation essentially requires reading the phrase "wherever used" to mean "wherever used under this heading," arguably adding words to the plans. Further, if the spousal-enlargement language applies only to uses of the word "spouse" under the heading in which it appears, then curious anomalies arise in other parts of the plans where "spouse" is used. For example, the term "spouse" is used several times in the plans' insurance-portability sections without any enlargement, and it would seem odd to interpret "spouse" there as not including domestic partners when domestic partners are deemed to be spouses in the coverage sections.

But in any case, the job for a court in these circumstances is not to adopt some reasonable alternative to Unum's interpretation of the plans, or even to adopt the best reading of them. A court must instead determine whether the party given the job of interpreting the plans (Unum here) came up with a reasonable interpretation. *See Manning*, 604 F.3d at 1038. Where plans are "susceptible to multiple, reasonable interpretations, an administrator's choice among the reasonable interpretations is not an abuse of discretion," even if a court would interpret the language differently as an original matter. *Donaldson v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 863 F.3d 1036, 1040–41 (8th Cir. 2017). So though the district court's reading of the plans is reasonable, perhaps even the best reading, we cannot agree that Unum's literal interpretation of the enlargement language is unreasonable, especially given the shortcomings of the district court's interpretation that we have noted. We think, in fact, that even if no enlargement language appeared anywhere in the plans, it would be reasonable for Unum to interpret the term "spouse" to include domestic partners, even if that reading might not have resonated in days gone by.

It is instructive that Sharon does not seriously attempt to defend the district court's opinion in her brief. She instead argues that Engle undoubtedly would have wanted the insurance proceeds to go to his children via his estate. But this is mere speculation. Rather than trying to guess at a decedent's undocumented desires, we look to the plans themselves, as they set out how Unum will determine whom to pay. "[W]hile ERISA is designed to protect the interests of plan participants and beneficiaries, those interests are specified by the written plan." *See Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 838–39 (8th Cir. 2007).

The district court also held that, even if the term "spouse" includes domestic partners, Jones did not meet the criteria set forth in the plans for being a domestic partner. Immediately after the enlargement language, the plans explain that a person must meet certain requirements to be deemed a domestic partner, the most important

of which for our purposes is that the employee (Engle here) must provide the plan administrator with a declaration identifying the domestic partner and explaining how the domestic partner meets other requirements. Engle did not designate Jones as his domestic partner before he died, so, the district court reasoned, Jones was not a "domestic partner" as the plans contemplate that term.

In response, Unum takes a position that at first appears inconsistent with its expansive view of the spousal-enlargement language: it maintains that the domestic-partner designation requirement is relevant to determining when a domestic partner is eligible for insurance coverage, not for determining if someone is due insurance benefits as a domestic partner. Unum asserts, though, that the plans' terms justify its ostensibly inconsistent positions, and we think Unum's explanation is reasonable. The spousal-enlargement language states broadly that "'[s]pouse' wherever used includes domestic partner[s]." The terms of the designation requirement are not so broad; in fact, they are expressly limited to the insurance-coverage context. For example, the designation requirement says the employee must provide a declaration "giv[ing] proof that the domestic partner has had the same permanent residence as [the employee] for a minimum of 6 consecutive months prior to the date insurance would become effective for that domestic partner." That language can reasonably be construed to limit the designation requirement to the insurance-coverage setting; that kind of requirement makes little sense in the benefits context.

We emphasize that, if we had the authority to interpret the plans instead of Unum, we might well interpret them as the district court did. But the plans expressly gave Unum authority to determine eligibility for benefits and the amount of any benefits, to resolve factual disputes, and to interpret and enforce plan provisions. The Supreme Court has recognized the importance of a court's deference to a plan administrator imbued with this authority, noting that it "preserves the 'careful balancing' on which ERISA is based" and "promotes efficiency by encouraging resolution of benefits disputes through internal administrative proceedings rather than

costly litigation. It also promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from *de novo* judicial review." *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010). We observe, finally, that our deference is near its zenith when the plan administrator opts to pay benefits rather than keep the money for itself. *See Manning*, 604 F.3d at 1038–39. In other words, we see no reason why it would have helped Unum's bottom line to pay Jones rather than Engle's estate.

We therefore reverse the district court's judgment and remand with instructions to enter judgment in the defendants' favor.

_____