# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3144
_____

Amber Boyer,

*Plaintiff - Appellee,*

v.

Schneider Electric Holdings, Inc.; Schneider Electric Holdings, Inc. Life and
Accident Plan; Unum Life Insurance Company of America,

*Defendants - Appellants.*
_____

Appeal from United States District Court
for the Western District of Missouri - Joplin
_____

Submitted: November 18, 2020
Filed: April 5, 2021
_____

Before COLLOTON, ARNOLD, and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

After Eric Boyer died in a single-vehicle crash, his sister Amber sought life and accidental death benefits under his insurance plan. Unum Life Insurance Company of America paid Amber life insurance benefits, but denied her claim for accidental death benefits. Unum concluded that no benefits were allowed because Boyer's

commission of a crime—speeding and passing vehicles in a no-passing zone—contributed to the crash. Amber disagreed and sued Unum and two co-defendants under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B). The district court ruled that Unum's interpretation of a "crime" exclusion in Boyer's insurance plan was unreasonable and granted summary judgment for Amber. We reach a contrary conclusion, and therefore reverse the judgment.

I.

Boyer died on January 22, 2016, after his vehicle ran off a two-lane road in Missouri and struck a tree. He was employed by Schneider Electric Holdings, Inc., and enrolled in Schneider's Life and Accident Plan. The Plan is funded by an insurance policy issued by Unum, which also serves as claims administrator with discretionary authority to make benefit determinations. Amber is the sole beneficiary of Boyer's insurance plan. Schneider, on Amber's behalf, filed a claim for life and accidental death benefits under the Plan.

The Plan insures against an "accidental bodily injury" resulting in death. It defines "accidental bodily injury" as "bodily harm caused solely by accidental means and not contributed to by any other cause." An exclusion from coverage is at issue here. The Plan does not cover accidental losses "caused by, contributed to by, or resulting from . . . an attempt to commit or commission of a crime."

Before reaching its decision to deny accidental death benefits, Unum reviewed Boyer's death certificate, a police report from the crash scene, an autopsy report, and a toxicology report. In its denial letter, Unum explained that the police report showed that Boyer was passing vehicles in a no-passing zone and driving approximately 80 miles per hour in a 35 mile-per-hour zone. Unum observed that improper passing and speeding are misdemeanors punishable by jail time in Missouri, and concluded that

Amber could not recover accidental death benefits because the loss occurred during Boyer's commission of a crime.

Amber filed an appeal with the claims administrator. Elaborating on its earlier denial, Unum explained that speeding and improper passing are crimes under Missouri law and "under the dictionary definition of 'crime.'" Even if the crimes were classified as violations or infractions under Missouri law, the decision added, "they would still be crimes" under Unum's interpretation of the Plan. The administrator concluded that because Boyer's death was "caused by, contributed to by, and/or resulted from an attempt to commit or commission of a crime," Amber was not entitled to accidental death benefits.

Amber sued, and the district court concluded that Unum abused its discretion in applying the "crime" exclusion, because "its determination was unreasonable and not supported by substantial evidence." Unum and its co-defendants appeal, and we review the district court's ruling *de novo*. *Engle v. Land O'Lakes, Inc.*, 936 F.3d 853, 855 (8th Cir. 2019).

II.

The Plan grants Unum discretion to determine eligibility for benefits, resolve factual disputes, and interpret its provisions, so we review Unum's denial of benefits for abuse of discretion. We uphold an administrator's interpretation of a plan if it is reasonable. *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 537 (8th Cir. 2020). We have identified a number of factors that bear on the question of reasonableness: (1) whether the interpretation is consistent with the goals of the plan, (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent, (3) whether the interpretation conflicts with substantive or procedural requirements of the ERISA statute, (4) whether the administrator has interpreted the words at issue consistently, and (5) whether the interpretation is

contrary to the clear language of the plan. *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957 F.2d 617, 621 (8th Cir. 1992).

By contrast, when an administrator evaluates facts to determine the plan's application to a particular case, we review whether the administrator's decision was supported by "substantial evidence." *Mitchell*, 953 F.3d at 537. Substantial evidence need not amount to a preponderance, but it must be sufficient to satisfy a reasonable mind of the conclusion. *See King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

Although Unum plays the dual role of evaluating claims and paying benefits, any conflict of interest does not alter the abuse-of-discretion standard of review. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115-16 (2008). A conflict of interest may be a factor in the review—a tie, for example, might be resolved against a conflicted administrator, *id*. at 117—but on this record, the circumstance does not warrant great weight. On the question of potential bias, Unum explained that the company does not permit outcomes on claims decisions to influence the company's evaluation and compensation of those who make the decisions, and Amber pointed to no contrary evidence.

A.

Amber challenged the factual premise of the administrator's decision, and the district court concluded that Unum lacked "any substantial evidence in support" of its determination. The court concluded that Unum acted without "any evidence" about the posted speed limit or Boyer's speed, and without evidence that speeding and improper passing contributed to Boyer's death.

We have examined the record and conclude that the administrator's decision was supported by substantial evidence. Unum relied largely on a police report that

-4-

included a diagram of the collision and five witness statements. All five witnesses observed Boyer's westbound vehicle weaving into the eastbound lane of traffic and attempting to pass several westbound vehicles in a no-passing zone. The investigating officer noted that the posted speed limit was 35 miles per hour, and that the road was clearly marked as a "no passing zone" with double solid yellow lines in the center.

One witness, an off-duty police sergeant, saw Boyer driving approximately 80 miles per hour as he approached the witness from behind. The administrator noted that the sergeant was experienced in assessing speed without radar. Two witnesses said that Boyer eventually passed their vehicles; one said that Boyer was traveling at "a high rate of speed." All five saw Boyer run off the road and strike a tree. One reported that Boyer's vehicle "lost control and began to spin out of control before striking a tree off of the roadway." The police report on the crash listed Boyer's speed above the posted limit and improper passing as "probable contributing circumstances." The evidence is sufficient to support a reasonable finding that Boyer's speeding and improper passing contributed to the crash.

The district court also faulted Unum for failing adequately to consider an investigator's report noting icy roads and the medical examiner's determination that the manner of Boyer's death was an "accident." Unum, however, did address Amber's contention that slush and ice on the road caused Boyer's car to spin out of control. The administrator concluded that her contention was "inconsistent with the statements of multiple eyewitnesses" who observed Boyer driving at a high rate of speed and attempting to pass. Road conditions do not undermine the administrator's conclusion that Boyer's illegal conduct at least "contributed to" the loss. The medical examiner's characterization of the crash as an "accident" does not conflict with the decision. The crime exclusion applies to "accidental losses."

B.

The district court also accepted Amber's contention that Unum's interpretation of the "crime" exclusion was unreasonable. Unum disputes that conclusion, and argues that the district court erred in setting aside its decision on benefits. "[W]here plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." *King*, 414 F.3d at 999 (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir. 1989)). "An interpretation of a term is reasonable if the interpretation conforms with ordinary meaning, which can be derived from 'the dictionary definition of the word and the context in which it is used.'" *Kutten v. Sun Life Assurance Co. of Can.*, 759 F.3d 942, 945 (8th Cir. 2014) (quoting *Hutchins v. Champion Int'l Corp.*, 110 F.3d 1341, 1344 (8th Cir. 1997)).

Unum articulated two reasons why the Plan's crime exclusion applied to Boyer's conduct. First, speeding and improper passing are misdemeanors under Missouri law and are punishable by jail time. Mo. Rev. Stat. §§ 304.010, 304.016, 558.011. As such, Unum concluded, "[s]peeding and violation of passing regulations are crimes under Missouri law." Second, speeding and improper passing are "crimes under the dictionary definition of 'crime.'"

Amber maintains that Unum's interpretation is contrary to the clear language of the Plan, which excludes coverage for accidental losses "contributed to by . . . commission of a crime." Common dictionaries, however, support the reasonableness of Unum's conclusion. Crime is "[a]n act that the law makes punishable." *Black's Law Dictionary* 451 (10th ed. 2014). A misdemeanor is "[a] *crime* that is less serious than a felony." *Black's Law Dictionary* 1150 (10th ed. 2014) (emphasis added). Lay dictionaries are in accord as to the meaning of "crime." *See American Heritage Dictionary of the English Language* 430 (5th ed. 2016) ("[a]n

-6-

act committed in violation of law where the consequence of conviction by a court is punishment, especially where the punishment is a serious one such as imprisonment"); *Webster's Third New International Dictionary* 536 (2002) ("the commission of an act that is forbidden . . . by a public law of a sovereign state to the injury of the public welfare and that makes the offender liable to punishment by that law in a proceeding brought against him by the state").

Boyer's conduct constituted a crime under Missouri law. Boyer was driving more than twice the legal speed limit and passing vehicles in a no-passing zone on a two-lane road in icy road conditions. This was not a *de minimis* non-criminal "infraction" for exceeding the speed limit by five miles per hour or fewer. *Cf.* Mo. Rev. Stat. §§ 304.009.1, 556.021.1. An administrator is not bound to incorporate a particular State's criminal law in fashioning its own definition of crime, for that approach could lead to benefits varying by jurisdiction. But Missouri's classification of improper passing and speeding as misdemeanor offenses reinforces the reasonableness of Unum's determination. Amber has not established that Missouri law is an outlier on the question whether Boyer was committing a crime at the time of the crash.

The district court expressed concern that the term "crime" does not encompass "traffic violations," and that Unum's interpretation would allow the administrator to deny coverage if an insured suffered an accident while driving one mile per hour over a speed limit. Unum's decision here, however, did not dictate that every violation of law in the area of "traffic" must be treated the same. Boyer's conduct of high-speed motoring and improper passing was akin to reckless driving, and Unum reasonably determined that he was committing a "crime." If an administrator were to extend the meaning of "crime" to cover driving 56 miles per hour in a 55-mile-per-hour zone, then there will be time enough to consider the reasonableness of that position. It is not implicated here.

Amber also defends the district court's conclusion that defining crime to include Boyer's conduct is inconsistent with the goal of the Plan to provide benefits in the case of an insured's accidental death. A plan that provides accidental death benefits, however, need not pursue that goal to the exclusion of all others. *See Wald v. Sw. Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1007 (8th Cir. 1996). The Plan at issue does not provide coverage for accidental losses caused or contributed to by commission of a crime. It thus tempers the goal of providing accidental death benefits in order to preserve assets for those who do not engage in criminal conduct. A plan "need not draw down the assets contributed by the provident many to shift the cost of self-destructive behavior." *Sisters of the Third Ord. of St. Francis v. SwedishAmerican Grp. Health Benefit Tr.*, 901 F.2d 1369, 1372 (7th Cir. 1990). Denying benefits to an insured who commits a crime is not inconsistent with the goals of the Plan.

Amber next argues that Unum's interpretation of "crime" renders the Plan meaningless, but that is not so. An exclusion for speeding and improper passing does not preclude an award of benefits when injury or death results from any number of occurrences when the insured does not commit a crime. Just in the area of auto accidents, for example, consider an insured who hits a deer in the highway, misses a curve on a dimly-lit road, falls asleep at the wheel, or sustains injury when impacted by a drunk or careless driver.

The district court thought it problematic that Unum's claims manual says the "crime" exclusion "was not intended to apply to activities which would generally be classified as traffic violations." As the Tenth Circuit observed, however, the manual "does not purport to be definitive and has substantial play in the joints." *Caldwell v. Unum Life Ins. Co. of Am.*, 786 F. App'x 816, 818 (10th Cir. 2019). The manual emphasizes that "[e]ach claim is unique and should be evaluated on its own merits." On the "crime" exclusion, the guidance also says that the exclusion *was* intended to apply to "an activity that would typically be classified as a crime . . . under state or

federal law." The document was not available to the insured, so it could not have affected his reasonable expectations. Even accepting the manual as evidence of Unum's intent, it does not remove Boyer's conduct from the "crime" exclusion. As discussed, Boyer's speeding and improper passing each were classified as a crime under state law, and the manual is reasonably understood to distinguish between driving offenses like Boyer's and minor traffic infractions that jurisdictions like Missouri do not even classify as crimes.

Nor has Amber established that Unum applies the crime exclusion inconsistently. She adverts to *Harrison v. Unum Life Ins. Co. of Am.*, No. CV-04-21-PB, 2005 WL 827090 (D.N.H. Apr. 11, 2005), where Unum applied a crime exclusion to drunk driving that New Hampshire classified as a "violation" rather than a "crime." *Id.* at *1, 3. Since Unum relied here on the fact that Boyer's conduct was criminal in Missouri, Amber perceives an inconsistency. But in both *Harrison* and here, Unum relied on the ordinary dictionary meaning of "crime" in applying the exclusion to a violation of law. Breadth of application does not establish inconsistency.

Amber argues finally that Unum's interpretation conflicts with the substantive and procedural requirements of ERISA. Summary plan descriptions must "be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). They also must contain information about "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." *Id.* § 1022(b). Amber observes that Unum's summary does not mention traffic violations, and argues that it does not place an average participant on fair notice that the crime exclusion encompasses speeding and improper passing. But there is nothing inherent in the word "crime" that would lead an average participant to believe that violations of law

like Boyer's are not contemplated, especially where state law criminalizes the conduct. The administrator's decision does not conflict with the statute.

*      *      *

For these reasons, the judgment of the district court is reversed, and the case is remanded with directions to enter judgment for the defendants.

_____