# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-3929

_____

Jay C. Richmond

*Plaintiff - Appellant*

v.

Life Insurance Company of North America

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern

_____

Submitted: September 22, 2022
Filed: October 18, 2022

_____

Before GRUENDER, SHEPHERD, and ERICKSON, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jay Richmond sought accidental death benefits under an employee benefit plan governed by the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., after his wife, Marie Richmond, died from

injecting herself with a cocktail of unprescribed narcotics. The district court[1] upheld the Life Insurance Company of North America's (LINA) decision to deny benefits based on a policy exclusion for the "voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician." Richmond appeals, contending that the district court erred because LINA's decision was unreasonable and not supported by substantial evidence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

At the time of her death, Marie was working as a registered nurse, a position that she had held for almost two decades. Throughout her tenure, Marie was a qualified participant in her employer's voluntary accident insurance plan (the Plan), managed by LINA. She maintained accidental death benefits in the amount of $500,000. Richmond is the sole beneficiary.

A few hours after work one day, at Marie's home, family members found her slumped over the side of her bed, unresponsive. After attempts to revive her failed, emergency responders pronounced her dead. Shortly thereafter, investigators discovered a vacutainer blood collection kit, a 20 mL syringe containing 1 mL of red liquid, a used quick-release tourniquet, and an opened 30 mL bottle of hydrochloride. The autopsy report identified serial needle punctures in multiple locations on Marie's limbs. The medical examiner opined that Marie died of mixed drug toxicity involving morphine, hydromorphone, meperidine, and fentanyl. Marie had no prescriptions for any of these drugs. Although the dosage of each of the medications was within the reported therapeutic range, and none alone would have been sufficient to kill her, the combination of these drugs was lethal.

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

Following Marie's death, Richmond sought accidental death benefits from LINA. Under the Plan, such benefits are paid only for deaths resulting from a "Covered Accident," which it defines as:

> A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
>
> 1.   occurs while the Covered Person is insured under this Policy;
> 2.   is not contributed to by disease, sickness, mental or bodily infirmity;
> 3.   is not otherwise excluded under the terms of this Policy.

R. Doc. 18-6, at 36. The Plan then lists certain exclusions. Especially relevant here, the Plan provides the following:

> In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the *Description of Benefits* Section:
>
> . . .
>
> 10.   voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.

R. Doc. 18-6, at 40.

After receiving evidence from Richmond, LINA denied his claim on two separate grounds. First, LINA determined that the voluntary ingestion exclusion barred recovery of benefits. Second, LINA determined that Marie's death was not a Covered Accident because death was a reasonably foreseeable result of self-injecting a mixture of controlled substances. Richmond appealed LINA's decision internally. After reconsideration, LINA upheld its initial denial on the same

grounds. Richmond then appealed LINA's decision internally for a second time, presenting new evidence. After reconsidering Richmond's claims in light of the new evidence, LINA upheld its initial denial of benefits on the same grounds. In its eight-page, single-spaced final denial letter, LINA explained that (1) it can reasonably interpret terms in the Plan and did so in interpreting "ingestion" to include absorption via intravenous injection; and (2) even in light of the new evidence, Marie's death was not a Covered Accident.

Richmond then filed this action, arguing that LINA's decision was unreasonable and not supported by substantial evidence. Shortly thereafter, Richmond filed a motion for judgment on the administrative record. The district court granted judgment in favor of LINA. Specifically, it held that LINA had reasonably interpreted the voluntary ingestion exclusion to include absorption of a substance through intravenous injection, and even if the exclusion did not apply, Marie's death was not an accident within the meaning of the Plan and under this Court's precedent. Richmond appeals.

II.

Under ERISA, a covered participant or beneficiary may bring a lawsuit to recover benefits under an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1). "We review the district court's adjudication of this claim de novo, applying the same standard of review to the plan administrator's decision as the district court." McClelland v. Life Ins. Co. of N. Am., 679 F.3d 755, 759 (8th Cir. 2012). Where, as here, an ERISA plan grants the plan administrator discretionary authority to interpret plan provisions and determine claimant eligibility, we review the administrator's decision for an abuse of discretion. McIntyre v. Reliance Standard Life Ins. Co., 972 F.3d 955, 958-59 (8th Cir. 2020). "Because a conflict of interest exists due to the fact that LINA is both the decision-maker and the insurer, we give that conflict some weight in the abuse-of-discretion calculation." McClelland, 679 F.3d at 759.

-4-

To determine whether LINA abused its discretion, we apply a two-step analysis. First, we must evaluate whether LINA's interpretation of the Plan language is reasonable. King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc). Second, we analyze LINA's application of that interpretation to the facts to ensure that it is supported by substantial evidence. Id. At bottom, LINA's decision stands if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Phillips-Foster v. UNUM Life Ins. Co. of Am., 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). "Any reasonable decision will stand," even if we would have found differently in the first instance. Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010).

## III.

We begin by reviewing LINA's analysis of the voluntary ingestion exclusion since it is dispositive of this appeal. "Because it is an exception to coverage, [LINA] has the burden of proving that the exclusion applies." Nichols v. Unicare Life & Health Ins. Co., 739 F.3d 1176, 1184 (8th Cir. 2014).

## A.

First, we evaluate LINA's interpretation of the exclusion. The Plan excludes coverage for any accident resulting from the "voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage." It is undisputed that the drugs found in Marie's system were not prescribed or taken under the direction of a physician. Indeed, the single point of contention here is LINA's interpretation of "ingestion." LINA argues that the term includes self-injections, while Richmond counters that the term is limited to oral intake for the purposes of digestion. To determine whether LINA's interpretation is reasonable, we employ the five-factor Finley v. Special Agents Mutual Benefit Ass'n, Inc. test and ask:

whether [LINA's] interpretation is consistent with the goals of the Plan, whether [its] interpretation renders any language in the Plan meaningless or internally inconsistent, whether [its] interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether [it has] interpreted the words at issue consistently, and whether [its] interpretation is contrary to the clear language of the Plan.

957 F.2d 617, 621 (8th Cir. 1992). Importantly, while these factors inform our analysis, "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." King, 414 F.3d at 999 (alterations in original) (citation omitted).

The first Finley factor asks whether LINA's interpretation is consistent with the Plan's goals. Id. Richmond argues that it is not, quoting a recent district court opinion stating that "[t]he primary goal of the Plan, and specifically accidental death coverage, is to provide benefits in the case of the insured's accidental death." Boyer v. Schneider Elec. Holdings, Inc., 350 F. Supp. 3d 854, 862 (W.D. Mo. 2018), rev'd, 993 F.3d 578 (8th Cir.), cert. denied, 142 S. Ct. 566 (2021). Yet we recently reversed this decision, specifically stating that a plan administrator "need not pursue that goal to the exclusion of all others." Boyer, 993 F.3d at 583. LINA emphasizes this language and argues that the primary goal of the Plan is instead to pay only meritorious claims, thereby preserving the actuarial soundness of the Plan. We have indeed suggested that this is an important goal of ERISA plans generally. See Farfalla v. Mut. of Omaha Ins. Co., 324 F.3d 971, 975 (8th Cir. 2003) ("[T]he purpose of the Plan is to benefit all covered employees, a purpose that is not furthered by paying an uncovered claim."). But there is an inherent circularity in both parties' arguments here. Richmond presumes Marie's death is covered under the Plan for purposes of arguing that the primary goal of the Plan is to pay covered claims. LINA, on the other hand, presumes Marie's death is not covered under the Plan for purposes of arguing that the primary goal of the Plan is to only pay covered claims. Thus, this first factor does not weigh in either party's favor.

The second <u>Finley</u> factor requires us to determine whether LINA's interpretation renders any Plan language meaningless or internally inconsistent. <u>King</u>, 414 F.3d at 999. Richmond argues that it does, suggesting that LINA's interpretation would mean that "drug-related deaths are by their very nature nonaccidental," rendering the voluntary ingestion exclusion superfluous. This argument lacks merit, as the exclusion specifically excepts all accidents resulting from ingesting prescribed drugs under the direction of a physician. It also implicitly excepts any accidents resulting from taking drugs involuntarily. Additionally, as LINA convincingly argues, if we were to interpret "ingestion" in Richmond's way, i.e., to mean only for the purpose of digestion, it would render the part of the exclusion about gas or fumes nonsensical. Thus, the second factor weighs in LINA's favor.

The third <u>Finley</u> factor asks whether LINA's interpretation conflicts with ERISA's substantive or procedural requirements. <u>Id.</u> Substantively, Congress enacted ERISA "to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place." <u>Conkright v. Frommert</u>, 559 U.S. 506, 516 (2010). Further, "ERISA does not prohibit exclusions in plan benefits where the exclusion has a legitimate business purpose." <u>Davidson v. Wal-Mart Assocs. Health & Welfare Plan</u>, 305 F. Supp. 2d 1059, 1087 (S.D. Iowa 2004). Procedurally, ERISA requires administrators to write plan documents in a way that the "average plan participant" can understand. 29 U.S.C. § 1022(a). Richmond argues that interpreting "ingestion" to mean self-injection misleads plan participants and stretches the definition beyond all applicable meaning. But as LINA persuasively counters, the average plan participant would read the voluntary ingestion exclusion to cover any death caused by willingly using unprescribed narcotics. Since LINA's interpretation and ERISA do not conflict, this factor supports LINA.

The fourth <u>Finley</u> factor requires us to ask whether LINA has interpreted "ingestion" consistently. <u>King</u>, 414 F.3d at 999. There is no evidence of LINA's past interpretations of "ingestion." In cases involving this fourth factor, we have

-7-

never decided definitively how to weigh the absence of past interpretations. See, e.g., Cash v. Wal-Mart Grp. Health Plan, 107 F.3d 637, 644 n.7 (8th Cir. 1997) (finding that factor four supported plan administrator's interpretation when neither party presented argument on the fourth factor); Donaldson v. Nat'l Union Fire Ins. Co., 863 F.3d 1036 1041 (8th Cir. 2017) (finding that factor four supported plan administrator's interpretation when there was no indication that it had "taken inconsistent positions in the past."); see also West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856, 896 (N.D. Iowa 2001) (giving factor four no weight when there was no evidence of the plan administrator's past interpretations of "accident"). Without deciding, we give Richmond the benefit of the doubt and assume that this fourth factor does not weigh in either party's favor.

Finally, the fifth Finley factor asks whether LINA's interpretation is contrary to the Plan's clear language. Where, as here, a plan document does not define a term, "[r]ecourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." Finley, 957 F.2d at 621 (citation omitted). We also look to the context in which the word is used. Kutten v. Sun Life Assurance Co. of Canada, 759 F.3d 942, 945-46 (8th Cir. 2014). Richmond cites one dictionary definition of "ingest" which is: "to take in for . . . digestion." Richmond argues that, under this definition, since Marie did not introduce the drugs into her digestive tract, LINA's interpretation is contrary to the clear language of the voluntary ingestion exclusion. LINA counters by citing another dictionary definition of "ingestion" as "the process of taking food, drink, or another substance into the body by swallowing or absorbing it." According to LINA, "ingestion" then, means the "process of absorbing a substance"—including drugs taken intravenously. Neither of these interpretations are unreasonable. However, the context controls here. Indeed, as discussed in our analysis of factor two, part of the exclusion refers to the ingestion of "gas or fumes," both of which are typically inhaled through the nose or mouth to the lungs, not the digestive system. Consequently, LINA's interpretation is more in line with the Plan's clear language, as Richmond's would render part of the exclusion meaningless. Thus, the fifth factor weighs in LINA's favor.

After weighing all five, the Finley factors tilt slightly in LINA's favor. Crucially, the dispositive question on abuse of discretion review is merely whether LINA "offered a 'reasonable interpretation of [ingestion.]'" King, 414 F.3d at 999 (citation omitted). Since the Finley analysis suggests that it has, LINA's interpretation stands.

B.

Having decided that LINA's interpretation of "ingestion" was reasonable, we now turn to whether LINA's application of its interpretation to the facts is supported by substantial evidence. Id. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Here, Marie undisputedly died because she willingly injected herself with a combination of unprescribed narcotics. Therefore, there is sufficient evidence to support LINA's application of the voluntary ingestion exclusion to Marie's death. Ultimately, since "a reasonable person *could* have reached a similar decision" as LINA given the evidence before it, Phillips-Foster, 302 F.3d at 794, LINA's decision must stand, even if we might have found differently in the first instance, Manning, 604 F.3d at 1038.

IV.

Because we agree with the district court's conclusion that LINA's denial of benefits was justified in light of the voluntary ingestion exclusion, we need not address LINA's assertion that Marie's death was not accidental, River v. Edward D. Jones Co., 646 F.3d 1029, 1034 (8th Cir. 2011), and we do not reach that issue today. Finally, Richmond argues that LINA did not provide him with a "full and fair review" of his claim as required by 29 U.S.C. § 1133. However, LINA's due consideration of Richmond's evidence and arguments; gratuitous two-stage appeal process; well-reasoned, eight-page, single-spaced final denial letter citing nearly all the evidence of record; and our analysis demonstrate otherwise.

-9-

For the foregoing reasons, we affirm the judgment of the district court.

_____